IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

AMBROSE J. SAMPLE, II,       )
       )
      Plaintiff,     )
       )
      v.       )     Civil Action No. 2:21-1301
       )
THEODORE JOHNSON, *et al.*,    )
       )
      Defendants.   )
       )
       )

## <u>MEMORANDUM OPINION</u>[1]

Pending before the Court is Defendants' Motion to Dismiss (ECF No. 47) the Amended Complaint (ECF No. 43).  For the reasons that follow, the Motion to Dismiss will be granted in part and denied in part.

## I.    Procedural History

In this civil rights lawsuit, Plaintiff Ambrose J. Sample, II brings a procedural due process claim under the Fourteenth Amendment of the United States Constitution against Defendants Theodore Johnson, Timothy J. Douglas, Mark Kosh, Jim Fox, and Maureen Barden arising out of the alleged failure to timely schedule his parole revocation hearing and properly credit and report his time served.  (*See* ECF No. 43.)    Sample commenced this case *pro se* on September 28, 2021.  (ECF No. 1).  Previously, Defendants moved to dismiss his initial complaint contending that they are entitled to absolute immunity due to the adjudicatory nature of their actions. (*See* ECF Nos. 13 & 14.)  Further, they argued that to the extent Sample asserted

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case. Therefore, the undersigned has the authority to decide dispositive motions and enter final judgment.

his claims against them in their official capacities, Eleventh Amendment immunity applies.  (*See* ECF Nos. 13 & 14.)

The Honorable Cynthia Reed Eddy denied Defendants' prior motion to dismiss, finding that the Eleventh Amendment immunity did not apply because Sample only brought claims against the Defendants in their individual capacities but did not address the issue of absolute immunity for adjudicatory functions.  (*See* ECF No. 21.)  Thereafter, the parties engaged in discovery.  The case was reassigned to the undersigned on September 7, 2022, after which counsel for Sample entered his appearance.  (ECF No. 37.)  Following a conference with the parties, the Court issued an amended scheduling order, pursuant to which Sample, now represented by counsel, filed an Amended Complaint.  (ECF Nos. 40, 42–43.)  Defendants filed a Motion to Dismiss the Amended Complaint on the grounds of absolute immunity, which is now fully briefed and ripe for disposition.  (ECF Nos. 47–48, 51.)

## II.    Factual Background

The Amended Complaint outlines the following events with respect to Sample's detention:

| Date | Event |
|---|---|
| June 17, 2017 | Sample is arrested and charged with state crimes while on state parole. (ECF No. 43 ¶ 11.) |
| June 18, 2017 | The Pennsylvania Board of Probation and Parole ("Board") files a detainer against Sample.  (*Id.*) |
| August 21, 2017 | The Board orders Sample to be detained pending disposition of the criminal charges.  (*Id.* ¶ 12.) |
| February 6, 2018 | Sample is indicted by a federal grand jury.  (*Id.* ¶ 13.) |
| February 12, 2018 | Sample's state criminal charges are *nolle prosequi'd*.  (*Id.* ¶ 14.) |
| March 8, 2018 | Sample is taken into temporary federal custody pursuant to a *writ of habeas corpus ad prosequendum*.  (*Id.* ¶ 15.) |
| March 21, 2019 | Sample is found guilty of the federal criminal charges.  (*Id.* ¶ 16.) |

| | |
|---|---|
| July 23, 2019 | Sample is sentenced to 55 months incarceration.  (*Id.* ¶ 17.) |
| July 25, 2019 | Sample is returned to Board custody.  (*Id.* ¶ 18.) |
| December 19, 2019 | Sample is transferred to SCI-Fayette.  (*Id.* ¶ 19.) |
| January 6, 2020 | Defendants Johnson and Douglas hold a parole revocation hearing. (*Id.* ¶ 20.)  Sample objects to the timeliness of the hearing.  (*Id.*) |
| February 12, 2020 | Defendants Johnson and Douglas determine that Sample's January 6, 2020 revocation hearing was timely.  (*Id.* ¶ 21.)  Thereafter, Sample files an administrative appeal challenging the timeliness of the revocation hearing.  (*Id.* ¶ 22.) |
| February 18, 2020 | The Board revokes Sample's parole and recommits Sample to serve 18 months of incarceration.  (*Id.* ¶ 23.) |
| June 23, 2020 | Defendants Kosh, Barden, and Fox affirm Defendants Johnson and Douglas' decision that Sample's January 6, 2020 revocation hearing was timely.  (*Id.* ¶ 24.) |
| July 7, 2020 | Sample files a petition for review with the Commonwealth Court of Pennsylvania.  (*Id.* ¶ 25.) |
| November 24, 2020 | The Board paroles Sample.  (*Id.* ¶ 25.) |
| November 25, 2020 | Sample is released into federal custody.  (*Id.* ¶ 26.) |
| November 30, 2020 | The Board rescinds its February 18, 2020 revocation decision and reinstates Sample to parole status.  (*Id.* ¶ 27.) |
| January 25, 2022 | Sample is released from custody.  (*Id.* ¶ 31.) |

According to the Amended Complaint, the Board had until November 22, 2019 (120 days from July 25, 2019—the day Sample was returned to Board custody) to hold a revocation hearing.  (*Id.* ¶ 18 (citing 37 Pa. Code § 71.4(1)(i).)    Sample argues that because Defendants Johnson and Douglas did not hold Sample's revocation hearing until January 6, 2020 (45 days after November 22, 2019), his hearing was untimely.  (*Id.* ¶ 20.)

Sample further argues that after the Board rescinded its February 18, 2020 revocation decision and reinstated his parole status, the time he served in the Board's custody (from June 18, 2017, to March 8, 2018, and from July 25, 2019, to November 24, 2020) should have been credited toward his federal sentence.  (*Id.* ¶¶ 27–28.)  Crediting that time would have made his

projected release date May 21, 2021.[2]  (*Id.* ¶ 28.)  However, he alleges that each Defendant failed to credit him with the time that he "served in the Board's custody and/or to properly inform the Federal Bureau of Prisons of [his] credited time served.  As a result, the Federal Bureau of Prisons calculated [his] federal sentence as beginning on November 30, 2022, the date that the Board had rescinded [his] parole revocation, and he received a projected release date of June 23, 2023."  (*Id.* ¶ 28.)

Sample was ultimately released from custody on January 25, 2022 and was incarcerated 255 days beyond the termination of his sentence.  (*Id.* ¶¶ 31–32.)

### III.   Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed, in whole or in part, for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In deciding a Rule 12(b)(6) motion, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).  When "accept[ing] all of the complaint's well-pleaded facts as true," the court "may disregard any legal conclusions."  *Id.* at 210–11.

To survive a motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft*

---

[2] There appears to be an inconsistency in the alleged proper release date because the Amended Complaint later cites Sample's efforts related to his release on or about May 15, 2021.  (ECF No. 43 ¶ 11.)  This discrepancy is not material to resolving the pending Motion to Dismiss.

*v. Iqbal*, 556 U.S. 662, 678 (2009).  "Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'"  *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).  In sum, the plaintiff "must plead facts sufficient to show that her claim has substantive plausibility."  *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014).

To assess the sufficiency of a complaint under *Twombly* and *Iqbal*, a court must take three steps: (1) outline the elements the plaintiff must plead to state a claim for relief; (2) peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth; (3) look for well-pled factual allegations, assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief.  *See, e.g.*, *Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011).  The court's plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.

To defeat a motion to dismiss, it is sufficient to allege a prima facie case, *see Castleberry v. STI Grp.*, 863 F.3d 259, 266 (3d Cir. 2017), but it is not necessary.  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002) (cited with approval in *Twombly*, 550 U.S. at 569–70).  The complaint need only allege enough facts to "raise a reasonable expectation that discovery will reveal evidence of [each] necessary element."  *Fowler*, 578 F.3d at 213 (quoting *Phillips*, 515 F.3d at 234).

Finally, "[i]n order for the defendants to succeed on a Rule 12(b)(6) dismissal based on absolute immunity, the allegations of [the] complaint must indicate the existence of absolute

immunity as an affirmative defense; the defense must clearly appear on the face of the complaint." *Wilson v. Rackmill*, 878 F.2d 772, 776 (3d Cir. 1989).

## IV.     Discussion

### A.     <u>Absolute Immunity</u>

There are two kinds of immunity under § 1983: qualified immunity and absolute immunity. *Yarris v. Delaware*, 465 F.3d 129, 135 (3d Cir. 2006). The Court uses a functional approach—focusing on the nature of the function performed, not the identity of the actor who performed it—to determine whether absolute or qualified immunity applies. *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 436 (1993) (("When judicial immunity is extended to officials other than judges, it is because their judgments are 'functionally comparable' to those of judges - - that is, because they, too, 'exercise a discretionary judgment' as a part of their function." (citations omitted)); *Thompson v. Burke*, 556 F.2d 231, 236 (3d Cir. 1977).

"Probation and parole officers are entitled to absolute immunity when they are engaged in adjudicatory duties. In their executive or administrative capacity, probation and parole officers are entitled only to a qualified, good faith immunity." *Wilson*, 878 F.2d at 775 (citing *Harper v. Jeffries*, 808 F.2d 281, 284 (3d Cir. 1986)). [3]

Adjudicatory acts are those that are an "integral part of the judicial process." *Thompson*, 556 F.2d at 237; *Williams v. Consovoy*, 453 F.3d 173, 178 (3d Cir. 2006) ("[A]bsolute immunity attaches to those who perform functions integral to the judicial process."). Examples of adjudicatory acts are a parole board member or parole or probation officer who "(1) hears evidence; (2) makes recommendations as to whether to parole a prisoner; or (3) makes decisions

---

[3] "A review of the case law on absolute immunity for non-judicial personnel reveals that the terms 'absolute immunity,' 'quasi-judicial immunity,' and 'quasi-judicial absolute immunity' have been used interchangeably." *Gay v. Parsons*, 61 F.4th 1088, 2023 WL 2470015, at *1 (9th Cir. 2023. For clarity, the Court will use refer to the immunity at issue here as "absolute immunity." *Wilson*, 878 F.2d at 775.

as to whether to grant, revoke or deny parole." *Breslin v. Brainard*, No. 01-CA-7269, 2002 WL 31513425, at *7 n. 10 (E.D. Pa. Nov. 1, 2002) (citing *Wilson*, 878 F.2d at 776 and *Harper*, 808 F.2d at 284.)

Conversely, when probation and parole officers or board members act in their executive, administrative, or ministerial capacity, they may be entitled to only qualified immunity. *Wilson*, 878 F.2d at 775–76. Examples of such executive, administrative or ministerial acts are when:

> a parole officer (1) investigates allegations of parole violations and crimes…; (2) types and signs warrants for the arrests of parole violators…; (3) assists police initiating investigations of crimes committed by parolees…; (4) provides false information that a parolee violated the terms of parole or committed a crime…; (5) performs the general responsibilities of a parole or probation officer...; (6) presents information to a parole board about a parole violation…; (7) conducts a warrantless search of a parolee's residence without probable cause…; (8) carries out a mandatory statutory duty such as verifying information in a parolee's record…; or (9) gathers information to prepare a presentence report.

*Breslin*, 2002 WL 31513425, at *7 n. 10.

### B.    The Parties' Arguments

Defendants argue that the "only factual allegations against [them] are that Johnson and Douglas wrongfully revoked Sample's parole and that Kosh, Barden, and Fox affirmed that decision after he filed an appeal." (ECF No. 48 at 4.) Thus, they conclude that each Defendant was acting in an adjudicatory function and is entitled to dismissal on the grounds of absolute immunity. (*Id.*)

Sample argues that Defendants oversimplify his claims. (ECF No. 51.) Instead, he identifies two different acts at issue: (1) Defendants' failure to timely schedule his revocation hearing coupled with each Defendant ignoring his arguments that such hearing was untimely; and (2) each Defendant's failure to credit Sample with his time served in the Board's custody and/or to properly inform the Federal Bureau of Prisons of Sample's credited time served. (*Id.* at

6.)   Sample argues that these functions (some of which are mandated by statute) are administrative, executive, or ministerial in nature, instead of adjudicatory; thus, he concludes that Defendants are not entitled to absolute immunity.  (*See generally, id.*)

### C.   Defendants' Motion Will be Granted in Part and Denied in Part

Because the Court must focus on the nature of functions alleged in the Amended Complaint, the Court agrees that Defendants' framing of the issues oversimplifies Sample's factual allegations.   In resolving the pending motion, the Court will determine whether the following matters are adjudicatory (and thus, entitled to absolute immunity) or executive, administrative, or ministerial (and therefore, potentially entitled to qualified immunity[4]):

(1) the failure to timely schedule Sample's revocation hearing within 120 days of Sample being returned to Board custody (and the affirmation of a decision finding that such revocation hearing was timely); and/or

(2) the failure to properly credit time served (or inform the Federal Bureau of Prisons of such credit).

### 1.   Defendants Are Entitled to Absolute Immunity over the Scheduling of Sample's Hearing

As it relates to the timeliness of Sample's hearing, two groups of Defendants emerge from the factual allegations of the Amended Complaint: (1) Defendants Johnson and Douglas, who held the hearing and ignored Sample's arguments regarding timeliness (ECF No. 43 ¶¶ 20–21), and (2) Defendants Kosh, Barden, and Fox, who affirmed the decision of Defendants Johnson and Douglas that Sample's January 6, 2020 revocation hearing was timely.  (*Id.* ¶¶ 22, 24.)

---

[4] Defendants did not raise any arguments with respect to qualified immunity.  Thus, whether any Defendant is entitled to qualified immunity will not be addressed in this Opinion.

> a. The Affirmation by Defendants Kosh, Barden, and Fox of Defendants Johnson and Douglas' Decision Was an Adjudicatory Function

With respect to Defendants Kosh, Barden, and Fox, who handled Sample's administrative appeal challenging the timeliness of his revocation hearing, their decision affirming such a finding, even if erroneous, is an adjudicatory function. *See Goodwine v. Keller*, No. 09-1592, 2012 WL 4482793, at *7 (W.D. Pa. Sept. 26, 2012) (finding that "to the extent that [p]laintiff is alleging liability predicated upon [d]efendants; denial of his appeal of the initial determination of the [Pennsylvania Board of Probation and Parole ("PBPP")], which is an adjudicatory function, [counsel for the PBPP and the Secretary of the PBPP] are entitled to absolute quasi-judicial immunity," because plaintiff sought "to impose liability on [d]efendants for their allegedly erroneous analysis of a legal question, i.e., [the judge's] jurisdictional authority" and further noting that "[w]hile the conclusion reached may have been in error, such error was committed in the course of the adjudicatory function of deciding [p]laintiff's appeals and, therefore, [d]efendants are entitled to absolute immunity."); *Fields v. Plousis*, No. 14-1139, 2015 WL 9304545, at *4 (D.N.J. Dec. 21, 2015) (finding that a defendant acted "in his adjudicatory capacity when he denied [p]laintiff's appeal of the Board's decision.").

Thus, the Court will grant Defendants' Motion to Dismiss with respect to Sample's claim that by affirming the decision of Defendants Josh and Douglas, Defendants Kosh, Barden, and Fox "knew, or should have known, that [his] revocation hearing was untimely and that their decision in this regard was violative of [his] right to due process" (ECF No. 43 ¶¶ 24, 38), because they are entitled to absolute immunity.

       b.      Defendants Johnson and Douglas' Actions of Scheduling and Holding an Untimely Hearing and Rejecting Sample's Argument Were Adjudicatory Functions

With respect to Defendants Johnson and Douglas, district courts within the Third Circuit differ as to whether scheduling a hearing is subject to absolute immunity. *Compare Simon v. Ward*, No. 99-1554, 2001 WL 41127, at *3 (E.D. Pa. Jan. 16, 2001) (concluding that the failure to grant a hearing is "is part and parcel of considering whether to grant or deny parole, and thus is a judicial act entitled to absolute immunity") *and Razzoli v. Sec'y of Navy*, No. 3:CV-06-1833, 2008 WL 906441 at *7 (M.D. Pa. Mar. 31, 2008) (noting, as an example, that "[a]bsolute immunity has also been found to apply with regard to the scheduling of parole revocation proceedings, as the proceedings are an integral part of the revocation decision itself, and functionally comparable to the decisions of a judge concerning the scheduling of a trial") *with Friedland v. Fauver*, 6 F. Supp. 2d 292, 305 (D.N.J. 1998) (finding that the "failure to schedule a case review of the preliminary hearing officer's decision by a board panel or a final parole revocation hearing within a reasonable time of [plaintiff's] arrest" was administrative and therefore not entitled to absolute immunity) *and Fields*, 2015 WL 9304545, at *4 (noting that defendants "appear to have acted in their administrative functions when they scheduled [p]laintiff's hearing and referred the case to the Board Panel" meaning that they were not entitled to absolute immunity).

Courts of Appeal that have considered the issue of scheduling have also come to different conclusions. *Compare Thompson v. Duke*, 882 F.2d 1180, 1184 (7th Cir. 1989) ("In the judicial context, scheduling a case for hearing is part of the routine procedure in any litigated matter. However, the fact that the activity is routine or requires no adjudicatory skill renders that activity no less a judicial function."), *cert. denied*, 495 U.S. 929 (1990)) *and Wilson v. Kelkhoff*, 86 F.3d

1438, 1444–45 (7th Cir. 1996) (characterizing *Thompson* as establishing that the "conduct deserving of [absolute immunity] protection includes not only actual decisions, but also those mundane, even mechanical, tasks undertaken by judges that are related to the judicial process" and rejecting that the argument that because parole "board members had no discretion to deny or postpone the revocation hearing the scheduling of the hearing" it was "an 'administrative' act outside the scope of absolute immunity.") *and Dallin Fort v. Washington*, 41 F.4th 1141, 1446 (9th Cir. 2022) *with King v. Simpson*, 189 F.3d 284, 288 (2d Cir. 1999) (noting that "[i]t is unclear whether [defendant's] alleged action in retarding, or delaying, [plaintiff's] effective parole date pending a hearing on the institutional incident report filed against him was an adjudicative function like denying or revoking parole or merely an administrative function like scheduling or making a recommendation.") *and Victory v. Pataki*, 814 F.3d 47, 66 (2d Cir. 2016) ("absolute immunity does not extend to parole officials and employees when they perform functions outside these narrowly delineated roles, such as 'scheduling or making a recommendation.'" (citing *King*, 189 F.3d at 288)). *See also Roller v. Cavanaugh*, 984 F.2d 120, 122 n.2 (4th Cir. 1993) ("Because qualified immunity suffices to shield the defendants from personal liability, we need not decide whether the scheduling of parole reconsiderations is performance of a quasi-judicial function, for which the defendants would have absolute immunity.").

Most recently, the United States Court of Appeals for the Ninth Circuit considered the issue of immunity where plaintiff argued that defendants were not entitled to absolute immunity when his hearing was scheduled nine months late contrary to mandatory statutory provisions because "'scheduling is an 'administrative task.'" *Dallin Fort*, 41 F.4th at 1143–44. The Ninth Circuit rejected plaintiff's arguments and noting that absolute immunity extends to "'non-judicial

officers for *purely administrative acts*—acts which taken out of context would *appear ministerial*, but when viewed in context are actually a part of the judicial function.'" *Id.* at 1444 (citation omitted) (emphases original); *id.* at 1446 (characterizing "scheduling a hearing" as "an administrative act 'inexorably connected' with a judicial function").  "Although scheduling a hearing may be characterized by some as 'mechanical or routine,' the fact that scheduling a hearing is an 'integral judicial . . . function' places it within the realm of activities protected by quasi-judicial immunity." *Id.* (citing *Thompson*, 882 F.2d at 1184–85).

In considering Defendants Johnson and Douglas' function in the Amended Complaint—scheduling and holding an untimely hearing and ignoring Sample's arguments regarding timeliness of that hearing—the Court concludes that these functions were "part and parcel of considering whether" to revoke his parole, and "thus [are] judicial act[s] entitled to absolute immunity." *Simon*, 2001 WL 41127, at *3.

Thus, the Court will grant Defendants' Motion to Dismiss with respect to Sample's claim that Defendants Johnson and Douglas failed to timely schedule Sample's revocation hearing within 120 days of Sample being returned to Board custody and ignored his arguments regarding the timeliness, because Defendants Johnson and Douglas are entitled to absolute immunity.

### 2.  Defendants Are Not Entitled to Absolute Immunity over the Failure to Properly Credit Time Served and Provide Notice of Time Served

With respect to Defendants' failure to credit his time served or provide notice to the Federal Bureau of Prisons of such time served (ECF No. 43 ¶¶ 29, 41–42), Defendants are not entitled to absolute immunity as such as function is administrative or executive.  *Simon*, 2001 WL 41127, at *3 (concluding that the "the failure to ensure plaintiff's credit for time served" does "not involve 'truly judicial acts' or conduct integral to the judicial process, and are not of the same ilk as parole board conduct typically found to trigger absolute immunity such as

hearing evidence or denying or revoking parole," because such omissions involving "a failure to properly assess, calculate, report, and process his credit for time served" were "quintessential administrative and executive functions" mandated by statute and therefore were not that entitled to absolute immunity); *Shaw v. Thomas*, No. 4:CV-04-1217, 2005 WL 2035364, at *3 (M.D. Pa. Aug. 22, 2005) (finding that the "the computation of the amount of [p]laintiff's prior sentence credit … is not an action protected by absolute immunity," because it "did not involve the hearing of evidence or a decision as to whether to grant, revoke or deny parole or even a decision as to whether to recommend a prisoner for parole.").

Thus, the Court will deny Defendants' Motion to Dismiss with respect to Sample's claim that each Defendant "failed to credit Plaintiff with the time he served in the Board's custody and/or to properly inform the Federal Bureau of Prisons of Plaintiff's credited time served," such that he "was not released from custody until January 25, 2022, approximately 255 days after his projected release date if Plaintiff had properly been credited with time served." (ECF No. 43 ¶¶ 41–42.)

## V.    Conclusion

For these reasons, the Court will grant in part and deny in part Defendants' Motion to Dismiss (ECF No. 47).

An appropriate Order follows.

BY THE COURT:

Dated: March 27, 2023                    /s/ Patricia L. Dodge
                                        PATRICIA L. DODGE
                                        UNITED STATES MAGISTRATE JUDGE